IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAIL AVERY, EXECUTRIX OF THE ESTATE OF JULIUS H. AVERY, DECEASED AND IN HER OWN RIGHT<br>5616 Woodcrest Avenue<br>Philadelphia, PA 19131,<br><br>      PLAINTIFFS<br><br>  V.<br><br>UNITED STATES OF AMERICA,<br><br>      DEFENDANT | CIVIL ACTION<br><br><br><br><br>Civil Action No. |

## COMPLAINT

Plaintiff, Gail Avery, Executrix of the Estate of Julius H. Avery, deceased and in her own right, file this Complaint against United States of America (Defendant.)  Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1. This case sounding in medical malpractice involves a claim for wrongful death brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 42 U.S.C. §1346.  Jurisdiction is based on 28 U.S.C. §1331 (federal question), 42 U.S.C. §1346, et seq. (FTCA litigation) and 28 U.S.C. §1367 (supplemental jurisdiction).

2. This matter is brought under the Federal Tort Claims Act.

3. Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

## THE PARTIES

4. Plaintiff, Gail Avery, is an adult individual who is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 5616 Woodcrest Avenue, Philadelphia, PA 19131.

5. Plaintiff decedent, Julius H. Avery, was born on June 17, 1949 and died on May 26, 2021.

6. Plaintiff, Gail Avery, wife of Julius H. Avery, is the duly appointed Executrix of the Estate of Julius H. Avery, deceased. Letters having been granted to Gail Avery by the Philadelphia County Register of Wills, on July 22, 2021. A true and correct copy of the Certificate of Grant of Letters is attached hereto as Exhibit "A."

7. Defendant United States of America d/b/a Philadelphia Veterans Administration Medical Center ("Philadelphia VAMC") is a state-chartered hospital and health care facility. See, e.g., 36 Pa. C.S.A. §3504.1. The Philadelphia VAMC maintains its principal place of business at 3900 Woodland Avenue, Philadelphia, PA 19104. The Philadelphia VAMC is a state agency within the meaning of 28 U.S.C. §2674. The Philadelphia VAMC includes Andre Ramdon M.D., Christopher Blackstock, M.D., Michael Golden, M.D., Anna Ohlson, M.D., Paul Hernandez, M.D. William Roberson Johnston M.D., Karen Flaherty-Oxler MSN, RN, Patricia O'Kane MSS, John J. Kelly M.D., Bob Askey MBA, AAS CA, Coy Smith ND, RN, MSN, NEA-BC, FACHE, CPHQ, Evan Perdikogiannis B.A., B.S., M.S., the Medical Executive Committee and the Department of Vascular Surgery & Endovascular Therapy as well as all other employees, agents, ostensible agents, workmen, and servants. As more fully set forth herein, the claim asserted against this Defendant is for professional negligence of its agents, ostensible agents, servants, and employees.

8. In doing the acts alleged herein Andre Ramdon M.D., Christopher Blackstock, M.D., Michael Golden, M.D., Anna Ohlson, M.D., Paul Hernandez, M.D. William Roberson Johnston M.D., and the Department of Vascular Surgery & Endovascular Therapy were acting as the actual, apparent and/or ostensible agents and/or employees of Defendant United States of America, that is Philadelphia VAMC, acting within the course and scope of their agency and/or employment with Defendant, United States of America and Philadelphia VAMC.

9. All physicians, specialists, fellows, residents, nurses, technicians, and/or other professional and non-professional personnel of the United States of America and specifically Philadelphia VAMC, including but not limited to Andre Ramdon M.D., Christopher Blackstock, M.D., Michael Golden, M.D., Anna Ohlson, M.D., Paul Hernandez, M.D. William Roberson Johnston M.D., and the Department of Vascular Surgery & Endovascular Therapy who are responsible for monitoring, treating, and caring for Julius H. Avery in May of 2021 were acting as duly authorized, actual, apparent and/or ostensible agents, servants, and employees of Defendant United States of America and Philadelphia VAMC, and acted within the scope of their employment and/or actual, apparent and/or ostensible agency with Defendant, United States of America and Philadelphia VAMC.  The identity of any other individuals involved in Mr. Avery's care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of Defendant and will be the subject of discovery.

10. At all times relevant hereto, Julius H. Avery was under the medical care, treatment, and attendance of Defendant directly or through its agents, servants and/or employees including ostensible agents identified above and under their direct control or right to control.

## GENERAL ALLEGATIONS

11. On or about May 6, 2021, Julius Avery was 71 years old when he came under the

care of Dr. Andres Ramdon at the Philadelphia VAMC who performed a right lower extremity superficial femoral and popliteal artery atherectomy, drug coated balloon angioplasty, and left femoral Angioseal closure.

12.  On or about May 11, 2021, Mr. Avery presented to Dr. Ramdon and NP Analene Tunacao at the Vascular Surgery Clinic at the VAMC with complaints of worsening left lower extremity pain, with pain at rest focal to the left calf.

13.  On exam, ankle brachial index of the left lower extremity showed severely dampened ankle waveform at 0.48 and almost flat metatarsal waveform.

14.  Mr. Avery's left lower extremity pain at rest had only developed after the Angioseal closure device had been deployed in his left common femoral artery 5 days prior. Mr. Avery had no complaints of left lower extremity pain prior to the May 6, 2021 procedure.

15.  Dr. Ramdon recommended a left lower extremity SFA intervention in the cath lab scheduled for May 13, 2021.

16.  On or about May 13, 2021, Mr. Avery underwent left lower extremity angiogram with balloon angioplasty of common femoral artery by a right femoral arterial approach performed by Dr. Ramdon.

17.  At the start of the procedure Dr. Ramdon made no effort to confirm the availability of necessary equipment and devices.

18.  The wire and subsequent 7 French sheath were passed up the right iliac artery, across the aortic bifurcation and down the right iliac artery to gain access in the left common femoral artery.

19.  Intraoperative angiography demonstrated a focal area of severe stenosis in the left common femoral artery, in the same location as where the Angioseal closure device had been

deployed 5 days earlier.

20. During the procedure, after the lesion was crossed with a 0.35 mm guidewire, balloon angioplasty was attempted, first with a 3 mm balloon, then a 6 mm. A decision was then made to do a prolonged inflation with a larger balloon.

21. Dr. Ramdon's surgical notes stat that there "was[sic] no 7mm or 8mm that were available" but instead of waiting to obtain the correct sized device, a decision was made to do "a gentle inflation with a 9 [mm] balloon."

22. Dr. Ramdon's notes document that "However, post release of this balloon revealed that there was a more complex dissection which was focal but more extensive with lumenal compromise."

23. An operating room was not immediately available.

24. Dr. Ramdon instead elected to use a focal short segment Viabahn stent. Again there was not proper sizing available nor was a representative present at the VAMC.

25. During placement of the sheath and stent, Mr. Avery expressed pain and became hypotensive.

26. After placement of the sheath Dr. Ramdon recognized it was misplaced and had to be moved.

27. Multiple sheath/catheter/wire exchanges became necessary.

28. Thereafter a secondary angiogram reavealed a blush at the aortic bifurcation indicative of extravasation and dissection.

29. No aortic device or equipment was available at the VAMC.

30. Angiographic images showed continued bleeding.

31. Heparin was reversed.

32. Angiography confirmed that the aortic bifurcation had ruptured. The arterial bleed was treated by emergently placing a branched endovascular aortic aneurysm repair ("EVAR") graft from the distal aorta with limbs extending down the external iliac arteries, and essentially occluding both internal iliac arteries.

33. The branched EVAR repair was complicated by acute bilateral EVAR thrombosis. Dr. Ramdon attempted to declot the occluded EVAR stent graft with a Penumbra device without success.

34. Mr. Avery, who initially had focal narrowing of the left common femoral artery at the area of the previously placed Angioseal closure, now had no blood flow to either extremity because there was no blood flow beyond the aortic bifurcation.

35. Dr. Ramdon called two additional surgeons, Anna Ohlsson, M.D., and Michael Golden, M.D. to address this emergent situation.

36. A right axillo-bifemoral arterial bypass with a bifurcated graft was placed from the right axillary artery, tunneled subcutaneously and connected to both common femoral arteries. The plug of the Angioseal closure device was encountered during the left groin dissection.

37. Despite failing to confirm by angiography or direct examination if the aortic rupture was sealed and in light of the known aortic rupture, Dr. Ramdon elected to administer an additional 5,000 units of Heparin to treat the thrombosis.

38. At this point in the procedure, 21,000 units of Heparin had been administered, increasing the rate of hemorrhage from the aorta and other incisions.

39. Exploratory laparotomy was performed. A retroperitoneal hematoma was identified but not explored. At no time was it determined if the EVAR graft had actually sealed

the arterial leak at the aortic bifurcation.

40. Mr. Avery's abdomen was left open and a wound vac was placed. This was followed by bilateral four compartment lower extremity fasciotomies for compartment syndrome.

41. Mr. Avery was then transferred to the Hospital of the University of Pennsylvania for critical care.  His post-operative course was complicated by the development of multisystem organ failure represented by bilateral cerebral and cerebellar infarction, hypoxic encephalopathy, bowel ischemia and infarction requiring ileocecectomy, left kidney infarction, acute kidney injury requiring continuous renal replacement therapy, shock liver, respiratory failure requiring ventilatory support, and myocardial infarction.

42. Mr. Avery died on May 26, 2021 as a result of the complications of Dr. Ramdon's procedure.

43. The negligence of the defendants by and through its agents, the physicians at the Philadelphia VA Medical Center as set forth with particularity in the counts below directly and proximately caused Plaintiff to suffer the following injuries:

    a. bilateral cerebral and cerebellar infarction;

    b. hypoxic encephalopathy;

    c. compartment syndrome;

    d. aortic rupture;

    e.  limb ischemia;

    f. infraclavicular incision;

    g. bowel ischemia;

    h. bowl infarction;

      i. multisystem organ failure;

      j. left kidney infarction;

      k. acute kidney injury;

      l. shock liver;

      m. respiratory failure;

      n. myocardial infarction;

      o. Pain;

      p. Suffering;

      q. Ventilation intubation;

      r. Embarrassment;

      s. Humiliation;

      t. Anxiety;

      u. Fear and fright;

      v. Conscious pain and suffering;

      w. Mental anguish;

      x. Physical disfigurement;

      y. Past medical expenses;

      z. Loss of life's pleasures and

      aa. Death.

44. The injuries to Julius H. Avery were caused solely by the negligence of the Defendant by and through its agents, the physicians at the Philadelphia VA Medical Center as set forth more fully below and were not caused or contributed to in any way by any negligence on the part of Mr. Avery.

## COUNT I-NEGLIGENCE

### PLAINTIFF V. UNITED STATES OF AMERICA
### D/B/A PHILADELPHIA VETERANS ADMINISTRATION
### MEDICAL CENTER

45. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

46. The negligence of Defendant United States of America d/b/a Philadelphia Veterans Administration Medical Center by and through its employees, servants, agents, apparent agents, ostensible agents and/or workmen, including Andre Ramdon M.D., Christopher Blackstock, M.D., Michael Golden, M.D., and the Department of Vascular Surgery & Endovascular Therapy includes the following:

    a. Negligent placement of a left femoral Angioseal closure on May 6, 2021;

    b. Failure to recognize the significance Mr. Avery's May 11, 2021 presentment with left common femoral stenosis, dissection, and rest pain as a consequence of the Angioseal device used to close the femoral arteriotomy from the May 6, 2022 procedure;

    c. Failure to appreciate the significance of the Angioseal in Mr. Avery's presentment and consider removal of the closure device intimal felt pad of the Angioseal with concomitant endarterectomy and patch angioplasty prior to the May 13, 2021 procedure;

    d. Failure to consider or recommend common femoral endarterectomy and patch angioplasty, as opposed to balloon angioplasty prior to the May 13, 2021 procedure;

    e. Failure to consider relevant history documented in the medical record,

9

including Mr. Avery's arterial disease prior to Mr. Avery's May 13, 2021 procedure;

f.  Performing an unindicated balloon angioplasty procedure on May 13, 2021;

g.  Failure to ensure proper equipment was available for Mr. Avery's procedure on May 13, 2021;

h.  Failure to obtain and use proper medical equipment during the May 13, 2021 procedure;

i.  Failure to perform surgical femoral endarterectomy and patch angioplasty after balloon angioplasty failed on May 13, 2021;

j.  Misuse of medical devices including but not limited to intentionally underinflating a balloon catheter on May 13, 2021;

k.  Negligently administering 21,000 of Heparin during the May 13, 2021 procedure;

l.  Negligently administering intravenous Heparin to treat a thrombosed graft without confirming seal of aortic injury on May 13, 2021;

m.  Negligent placement of stent-grafts in the common femoral artery on May 13, 2021;

n.  Negligently entering the aortic bifurcation with Amplatz stiff wire on May 13, 2021;

o.  Failure to confirm by angiography that the aortic rupture had been stemmed prior to administration of additional Heparin, during the May 13, 2021 procedure;

      p.      Failure to recognize that placing a stent in the CFA, a point of flexation, would lead to future occlusion during the May 13, 2021 procedure;

      q.      Failure to confirm if the endovascular aortic aneurysm repair graft had actually sealed the arterial leak at the aortic bifurcation prior to the administration of Heparin during the May 13, 2021 procedure; and

      r.      Failure to open the retroperitoneum during the laparotomy and ensure the aorta was no longer bleeding during the May 13, 2021 procedure.

47.    The negligence of the Defendant by and through its aforementioned agents, servants, workmen and/or employees as set forth above caused the injuries and damages suffered by Julius H. Avery.

48.    The injuries to Julius H. Avery were caused solely by the negligence of Defendants their agents, servants and employees as identified and/or described herein, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Julius H. Avery.

WHEREFORE, Plaintiff respectfully demand damages against defendant in an amount in excess of One Hundred Fifty-Thousand ($150,000) Dollars and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

**FIRST CAUSE OF ACTION – WRONGFUL DEATH**

**PLAINTIFF V. UNITED STATES OF AMERICA**
**D/B/A PHILADELPHIA VETERANS ADMINISTRATION**
**MEDICAL CENTER**

49.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

50.    Decedent Julius Avery left surviving him the following persons who may be

entitled to recover for damages under the Wrongful Death Act:

    a.    Gail Avery (wife)

    b.    Janelle Avery (adult daughter)

    c.    Juanita Collins (adult daughter)

51.    Plaintiff, Gail Avery, as Executrix of the Estate of Julius Avery, deceased, brings this Wrongful Death Action on behalf of the beneficiaries under and by virtue of the Acts of 1855, P.L. 309, as amended, 42 Pa. C.S.A. 8301, the applicable Rules of Civil Procedure and decisional law.

52.    As a result of the negligent and careless acts and omissions of the Defendants, as set forth above, Plaintiff Decedent, Julius Avery, was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Wrongful Death Act.

53.    Plaintiff, Gail Avery, as Executrix of the Estate of Julius Avery, deceased, claims all damages recoverable under the Wrongful Death Act.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendant, individually, jointly and severally, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages and such other relief as this Honorable Court may deem appropriate.

## SECOND CAUSE OF ACTION – SURVIVAL ACTION

### PLAINTIFF V. UNITED STATES OF AMERICA
### D/B/A PHILADELPHIA VETERANS ADMINISTRATION MEDICAL CENTER

54.    The preceding paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

55.    Plaintiff, Gail Avery, as Executrix of the Estate of Julius H. Avery, deceased, brings this Survival Action on behalf of the Estate of Julius H. Avery, Deceased, under and by

virtue of 42 Pa. C.S.A. § 8302, the applicable Rules of Civil Procedure and decisional law.

56. As a result of the negligence, wrongful conduct and misconduct of Defendants, as set forth above, Julius Avery was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Survival Act.

57. Plaintiff, Gail Avery, as Executrix of the Estate of Julius H. Avery, deceased, and on behalf of Survival Act beneficiaries claims all damages recoverable under the Survival Act.

WHEREFORE, Plaintiff respectfully demands judgment in their favor and against Defendant, individually, jointly and severally, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages and such other relief as this Honorable Court may deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated:  June 1, 2022          BY: _____
THOMAS R. KLINE, ESQUIRE
PA 28895
Tom.Kline@KlineSpecter.com

REGAN S. SAFIER, ESQUIRE
PA 79919
Regan.Safier@KlineSpecter.com

AMANDA J. LORENTSON, ESQUIRE
PA 328911
Amanda.Lorentson@KlineSpecter.com

Attorneys for the Plaintiffs
1525 Locust Street
Philadelphia, PA  19102
(215) 772-1000
(215) 735-5827 Fax